**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Benjamin A. Griffin and V.G., Respondents,

v.

Lesa N. Benjamin, Appellant.

Appellate Case No. 2022-001215

———

Appeal From York County
David G. Guyton, Family Court Judge
Coreen B. Khoury, Family Court Judge

———

Unpublished Opinion No. 2026-UP-342
Heard September 10, 2025 – Filed July 1, 2026

———

**AFFIRMED**

———

Barrett Wesley Martin, of Barrett W. Martin, P.A., of Rock Hill, for Appellant.

Daniel Dominic D'Agostino, of D'Agostino/Davis Law Group, of York, for Respondent Benjamin A. Griffin.

Bruce M. Poore, of Rock Hill, for Respondent V.G.

———

**PER CURIAM:** In this appeal from the family court, Lesa N. Benjamin argues the family court erred in (1) terminating Benjamin A. Griffin's child support obligation

for their child, V.G., (2) denying her motion to dismiss V.G.'s claims and Griffin's emancipation claim, and (3) denying her request for sanctions. We affirm.

"On appeal from the family court, the appellate court reviews factual and legal issues de novo."[1] *Tomlinson v. Melton*, 428 S.C. 607, 611, 837 S.E.2d 230, 232 (Ct. App. 2019). "Thus, the appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence." *Id.* "However, 'this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses.'" *Holland v. Holland*, 438 S.C. 69, 74, 881 S.E.2d 766, 769 (Ct. App. 2022) (quoting *Wilburn v. Wilburn*, 403 S.C. 372, 380, 743 S.E.2d 734, 738 (2013)). "*[D]e novo* review neither relieves an appellant of demonstrating error nor requires [an appellate court] to ignore the findings of the family court." *Bauckman v. McLeod*, 429 S.C. 229, 240, 838 S.E.2d 208, 213 (Ct. App. 2019) (second alteration in original) (quoting *Lewis v. Lewis*, 392 S.C. 381, 389, 709 S.E.2d 650, 654 (2011)). "Accordingly, we will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court." *Holland*, 438 S.C. at 74, 881 S.E.2d at 769 (alteration in original) (quoting *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012)).

1. Mother contends the family court erred in terminating Father's child support obligation because no statute authorizes the family court to terminate a parent's child support obligation retroactively.[2] She argues the family court did not have

---

[1] "[T]he standard for reviewing a family court's evidentiary or procedural rulings . . . [is] an abuse of discretion . . . ." *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 813 S.E.2d 486, 486 n.2 (2018) (per curiam).

[2] The parties agree the family court did not award a retroactive modification of child support, in which the modification of a child support obligation is retroactive to before the date of the filing of the complaint. The family court's decision on child support dated back to several months after Father filed his original complaint asking that his support obligation to Mother be terminated, not before his complaint was filed. *See* S.C. Code Ann. § 63-17-310 (2010) ("No such modification [of an order for child support] is effective as to any installment accruing prior to filing and service of the action for modification."); *Bauckman*, 429 S.C. at 242, 838 S.E.2d at 214 ("[O]ur courts have interpreted '[the precursor to section 63-17-310] as expressing the legislative intent that *the retroactive bar apply only to arrears that have accrued at the time a petition for modification is*

jurisdiction to modify a child support order once V.G. became emancipated at the age of eighteen. Specifically, Mother contends the family court erred by issuing an order, when V.G. was nineteen years old, that retroactively terminated Father's child support obligation seven months before V.G. turned eighteen. Mother argues child support must run until a child turns eighteen, unless the child becomes married or self-supported as determined by the court, according to section 63-3-530(A)(17) of the South Carolina Code (Supp. 2025). We disagree.

Mother relies on the fact that the family court's jurisdiction is limited to that specified by statute. She asserts that under the statute, a family court does not have the authority to end child support before specific events listed by the statute occur, specifically here, the child turns eighteen. Mother argues the legislature provided the family court no discretion to choose a point in time earlier than the triggering events listed in the statute. She also asserts the family court made no findings of fact and provided no legal authority to support terminating child support for V.G. before those triggering events. Also, she argues because the family court had jurisdiction over child support obligations only until V.G. turned eighteen, it could not have made any change to child support at the time it issued the order as V.G. was over eighteen at that time.

This action is for the modification of an order issued by a California court. The primary focus of Mother's child support argument is not that the family court lacked jurisdiction because a California court issued the order; however, Mother briefly argues in her appellant's brief, and more explicitly in her reply brief, South Carolina does not have jurisdiction over the California order.[3] Mother did not

_____

*filed*.'" (second alteration in original) (quoting *Harris v. Harris*, 307 S.C. 351, 354, 415 S.E.2d 391, 393 (1992))). We interpret Mother's use of the word retroactively to mean dating back to before the time when V.G. turned eighteen, instead of before the date of filing of the complaint.

[3] In her appellant's brief, Mother contends because the child support obligation no longer existed once V.G. turned eighteen, the family court had no authority to modify the California order. She also asserts the family court did not make findings of facts to declare it had jurisdiction to modify a California order. At oral argument, Mother stated because she lived in South Carolina, she was not arguing a lack of jurisdiction over modifying custody on the basis that the order was issued by a California court. Mother also stated at oral argument she was not disputing jurisdiction of the South Carolina family court to modify the custody order. In her reply brief, Mother asserts Father and V.G. alleged in their complaint that a California court had recently modified the child support obligation after Mother

argue to the family court it could not modify the order because a California court, rather than a South Carolina court, had issued the order. Counsel's answers at oral argument indicate she is not raising a challenge on that basis. None of the parties resided in California at the time this action was filed or thereafter. Father lived in North Carolina, Mother lived in South Carolina, V.G. had been living with Mother in South Carolina before starting her visitation with Father in North Carolina, Mother filed the application to register the custody order in South Carolina[4] and

and Father's older child turned eighteen. The original complaint as well as both amended complaints stated, "The parties were previously before the court in California in January 2017 and the order is attached hereto. The court in California has recently reset the child support." No order was attached to the complaints in the record on appeal. The only California order included in our record was dated as filed and signed by a judicial officer in California on February 18, 2015; as it is listed in the table of contents in the record, that order appears to have been attached to Mother's registration application. Mother asserts that because neither Father, V.G., nor herself lived in California when the California court modified the order to end the obligation for the older child, a California court could not have modified the order without both Mother and Father's consent in open court, and accordingly, California retained continuing exclusive jurisdiction to modify the support order and South Carolina lacked the necessary jurisdiction to modify the order. While the parties agree California issued a subsequent order to decrease the amount ending the obligation for the parties' older child, that order is not in the record. Further, no party put forth any evidence of the modification proceedings, so we cannot simply assume the parties consented to California's jurisdiction, thus depriving South Carolina of jurisdiction. The California order contained in the record appears to be a standardized form order and does not provide any factual findings or legal conclusions. That order indicates those proceeding took place on October 28, 2014, and the included report generated by California's child support guidelines calculator was also dated that day. The proof of service was dated October 29, 2014. At the end of the attached order was a certification as well as a receipt both from the Superior Court of California and both dated July 22, 2019. The receipt listed the payor as Father, with a mailing address in California, which was the same address listed on the 2014 proof of service. Apart from this, the record reflects Father considered his residence to be in North Carolina in July of 2019, although he was deployed by the Air Force to Korea from July 2019 until December 2019.

[4] Mother's application was filed August 5, 2019. The following day, the notice of registration the county Clerk of Court's Office sent to Father was filed. The notice stated the custody order was enforceable as of August 5, 2019, in the same manner

attached a 2015 California order on custody and child support, and Father filed the current action in South Carolina.

Whether South Carolina has the authority to modify another state's order on custody and child support concerns subject matter jurisdiction. Accordingly, we must first ensure the South Carolina family court had the authority on this basis to modify the order here.[5] *See S.C. Dep't of Soc. Servs. v. Tran*, 418 S.C. 308, 314-15, 792 S.E.2d 254, 257 (Ct. App. 2016) (per curiam) ("[I]t is the duty of this court to take notice and determine if the [f]amily [c]ourt had proper jurisdiction for its actions." (alterations in original) (quoting *Badeaux v. Davis*, 337 S.C. 195, 205, 522 S.E.2d 835, 840 (Ct. App. 1999))); *Thompson v. Thompson*, 428 S.C. 142, 148 n.7, 833 S.E.2d 274, 277 n.7 (Ct. App. 2019) (addressing the family court's subject matter jurisdiction to modify an order even though the appellant did not specifically contest it "because '[l]ack of subject matter jurisdiction cannot be waived and should be taken notice of by [the appellate court] on its own motion'" (alterations in original) (quoting *Eichor v. Eichor*, 290 S.C. 484, 487, 351 S.E.2d 353, 355 (Ct. App. 1986))).

The complaint and amended complaint requested modification of custody and termination of Father's child support obligation to Mother, both ordered by a California court.[6] Two different statutory schemes govern these requests—the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[7] and the Uniform Interstate Family Support Act (UIFSA),[8] respectively. *See Friedetzky v. Hsia*, 117 A.3d 660, 662 (Md. Ct. Spec. App. 2015) ("The UCCJEA, governing custody . . . , and the UIFSA, governing . . . child support, were established to provide systematic and harmonized approaches to urgent family issues . . . . As separate legal schemes, the UCCJEA and UIFSA contain distinct jurisdictional provisions."); *id.* at 667 ("[T]he [UCCJEA] governs actions involving legal custody[ and] physical custody . . . ; it does not govern actions for child support . . . . The UIFSA, on the other hand, governs claims for child support . . . and does not address custody.").

---

as a custody order issued by a court in this state. The notice cited to section 63-15-358 of the South Carolina Code (2010).

[5] Mother states the family court has the jurisdiction and the authority to modify an order of any other court regarding child support.

[6] In the second amended complaint, Father requested child support. The family court ultimately denied this request, and Father did not appeal.

[7] S.C. Code Ann. §§ 63-15-300 to -394 (2010).

[8] S.C. Code Ann. §§ 63-17-2900 to -4040 (2010 & Supp. 2025).

Decisions involving custody come under the UCCJEA. *See Tran*, 418 S.C. at 315, 792 S.E.2d at 257 ("[T]he UCCJEA govern[s] subject matter jurisdiction in interstate custody disputes." (quoting *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012))); *see also* § 63-15-302(3) ("'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support . . . ."). Child support falls under the UIFSA. *See Deltoro v. McMullen*, 322 S.C. 328, 331, 471 S.E.2d 742, 744 (Ct. App. 1996) ("[The] UIFSA addresses the creation, enforcement, and modification of child support orders affecting residents of different states."), *superseded by statute on other grounds as stated in Badeaux*, 337 S.C. 195, 522 S.E.2d 835.

Under both of these statutory schemes, the South Carolina family court had jurisdiction.

"The UCCJEA . . . provides three basic ways a state can establish jurisdiction over a case involving [a] child . . . ." *Tran*, 418 S.C. at 315, 792 S.E.2d at 258. One of those ways is that "a state can have jurisdiction to modify a child custody determination made by another state." *Id.*; *see* § 63-15-334 (providing the requirements for this state to have jurisdiction to modify). "After a state issues an initial child custody determination, it retains exclusive continuing jurisdiction over that child until" certain statutory requirements are met. *Tran*, 418 S.C. at 315, 792 S.E.2d at 258 (citing § 63-15-332).

"[M]odification of a custody decision from another jurisdiction can occur only upon the satisfaction of certain specified conditions." *Russell v. Cox*, 383 S.C. 215, 219, 678 S.E.2d 460, 463 (Ct. App. 2009). First, "a South Carolina family court, except in certain situations not applicable here, may not modify a custody order issued by a court of another state unless a court of this [s]tate has jurisdiction to make an initial custody determination under" section 63-15-330(A)(1) or (2) of the UCCJEA. *Id.* at 217-18, 678 S.E.2d at 462 (citing § 63-15-334). Here, the parties meet the requirements of subsection (A)(1) because South Carolina was either V.G.'s home state on the date Father filed his complaint or although V.G. no longer lived in South Carolina, Mother still did and it was V.G.'s home state within six months before that filing. *See* § 63-15-330(A)(1).

Because South Carolina has jurisdiction to make an initial custody determination, it has authority to modify the California custody order if the statutory requirements are met. The requirement applicable here is that "a South Carolina court . . . determines that the child, the child's parents, and any person acting as a parent do not presently reside in the issuing state." *Russell*, 383 S.C. at 218, 678 S.E.2d at 462 (citing § 63-15-334). None of the parties contend that V.G. or either parent lives in California. None of the orders included in the record directly stated where Mother lived during the time of these proceedings. However, the orders implied Mother was currently living in South Carolina. In the final order and the amended final order, the family court stated it had "jurisdiction of the subject matter of this action and personal jurisdiction of the parties." One of the temporary orders stated V.G. "resides at the home of . . . [F]ather . . . in North Carolina." The family court's order ruling on Mother's Rule 59(e) and 60(b)(4), SCRCP, motion stated Mother "filed to domesticate the California order on August 5, 2019. . . . Both parties litigated the case based upon the order from California being domesticated." The amended final order stated Mother had primary custody of V.G. and V.G. began visiting Father and did not return to Mother's physical custody. The order then stated V.G. decided she wanted to remain in North Carolina with Father and referenced V.G. moving to North Carolina and living in Father's home. The complaint and the amended complaint stated Mother was a resident of South Carolina, Father was in the military and deployed to Korea but his address remained in North Carolina, and none of the parties were living in California.[9] The answer to the amended complaint admitted those allegations.[10] In the second

___

[9] The second amended complaint restated those same allegations but omitted Father being deployed and indicated Father and V.G. resided in North Carolina. Mother's answer to the second amended complaint admitted those allegations. Father testified he resided in North Carolina and Mother had relocated to South Carolina at some point after the California child support obligation was established. Father testified he returned from Korea in December 2019. When Mother applied to register the California custody order in South Carolina, she provided a South Carolina mailing address.

[10] In addition to the UCCJEA, the Parental Kidnapping Prevention Act (PKPA) also governs subject matter jurisdiction in interstate custody disputes. *Tran*, 418 S.C. at 315, 792 S.E.2d at 257; *see also* 28 U.S.C.A. § 1738A. "The PKPA is primarily concerned with when full faith and credit should be given to another [s]tate's custody determination." *Id.* (alteration in original) (quoting *Anthony H.*, 397 S.C. at 451, 725 S.E.2d at 134). "The UCCJEA's primary purpose is to provide uniformity of the law with respect to child custody decrees between courts in different states." *Id.* at 315, 792 S.E.2d at 257-58 (quoting *Anthony H.*, 397 S.C.

amended complaint, Father alleged Mother had domesticated the California order in South Carolina and that jurisdiction and venue was proper in York County, South Carolina. Mother admitted these allegations in her answer to that complaint. Based on our de novo review, we find Mother lived in South Carolina and no longer lived in California. Thus, South Carolina had subject matter jurisdiction under the UCCJEA and the PKPA to modify the custody order issued by California.

Next, we turn to the jurisdictional requirements under the UIFSA because Father sought modification of both an award of physical custody and an award of child support. The "UIFSA allows a party to register a support order and seek to modify it at the same time." *Badeaux*, 337 S.C. at 209, 522 S.E.2d at 842. "[T]he registered support order may be modified only if the requirements of [s]ection 63-17-3830 or 63-17-3850 have been met." § 63-17-3820.

The requirements of section 63-17-3830 are met here. As noted above, even though the family court did not make an explicit finding as to where Mother lived,

---

at 451, 725 S.E.2d at 134). "Where the provisions of the . . . PKPA . . . and state law conflict, the [PKPA] controls." *Schwartz v. Schwartz*, 311 S.C. 303, 307-08, 428 S.E.2d 748, 750-51 (Ct. App. 1993). Here, California does not meet the requirements of the PKPA to retain continuing jurisdiction because it does not remain the residence of the child or one of the parties. *See Anthony H.*, 397 S.C. at 451-52, 725 S.E.2d at 135 (stating that under the PKPA, for a court to retain continuing jurisdiction that state must remain the residence of the child or a contestant). Under the PKPA, "one state's court may modify a custody order issued by another state . . . 'if[ ](1) it has jurisdiction to make such a child custody determination[] and (2) the court of the other [s]tate no longer has jurisdiction.'" *Clay v. Burckle*, 369 S.C. 651, 657, 633 S.E.2d 173, 176 (Ct. App. 2006) (quoting 28 U.S.C. § 1738A(f) (2000)). Under the PKPA, South Carolina has jurisdiction to modify the custody order and California no longer does because V.G. did not live in California at the time of the filing of the complaint or within six months prior. *See* 28 U.S.C.A. § 1738A(c) ("A child custody . . . determination made by a court of a [s]tate is consistent with the provisions of this section only if--(1) such court has jurisdiction under the law of such [s]tate; and (2) one of the following conditions is met: (A) such [s]tate (i) is the home [s]tate of the child on the date of the commencement of the proceeding, or (ii) had been the child's home [s]tate within six months before the date of the commencement of the proceeding and the child is absent from such [s]tate because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such [s]tate . . . .").

the record makes clear that none of the parties including V.G. still live in California, Father was seeking the modification and is not a South Carolina resident, and Mother is subject to the personal jurisdiction of the state as a South Carolina resident.  *See* § 63-17-3830(A) ("[U]pon petition, a tribunal of this [s]tate may modify a child-support order issued in another state which is registered in this [s]tate if, after notice and hearing, the tribunal finds that: (1) the following requirements are met: (a) neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state; (b) a petitioner who is a nonresident of this [s]tate seeks modification; and (c) the respondent is subject to the personal jurisdiction of the tribunal of this [s]tate . . . .").

The UIFSA provides other stipulations relevant here.  "Modification of a registered child-support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this [s]tate . . . ."  § 63-17-3830(B).  However, "[a] tribunal of this [s]tate may not modify any aspect of a child-support order that may not be modified under the law of the issuing state, including the duration of the obligation of support."  § 63-17-3830(C).  "In a proceeding to modify a child-support order, the law of the state that is determined to have issued the initial controlling order governs the duration of the obligation of support."  § 63-17-3830(D).[11]  Accordingly, under the UIFSA, the child support ordered by the California court can be modified if that modification is allowed under both South Carolina and California law.

In South Carolina, the family court is a court of limited jurisdiction because it is a creature of statute.  *Theisen v. Theisen*, 394 S.C. 434, 441, 716 S.E.2d 271, 274

---

[11] The UIFSA does not define the term modification.  However, the Full Faith and Credit for Child Support Orders Act (FFCCSOA) does: "The term 'modification' means a change in a child support order that affects the amount, scope, or duration of the order and modifies, replaces, supersedes, or otherwise is made subsequent to the child support order."  28 U.S.C.A. § 1738B(b)(8).  The FFCCSOA "prohibits a South Carolina Court from modifying the order of a jurisdiction which maintains continuing, exclusive jurisdiction.  [The] FFCCSOA . . . is very similar to [the] UIFSA in both purpose and structure."  *Badeaux*, 337 S.C. at 212, 522 S.E.2d at 843-44.         the FFCCSOA, "If there is no individual contestant or child residing in the issuing State, the party . . . seeking to modify, or to modify and enforce, a child support order issued in another [s]tate shall register that order in a [s]tate with jurisdiction over the nonmovant for the purpose of modification."  28 U.S.C.A. § 1738B(i).  Under the FFCCSOA, South Carolina has jurisdiction to modify the child support order.

(2011).  "The subject matter jurisdiction of the family court is limited to what is 'expressly or by necessary implication conferred by statute.'"  *McLeod v. Starnes*, 396 S.C. 647, 659, 723 S.E.2d 198, 205 (2012) (quoting *State v. Graham*, 340 S.C. 352, 355, 532 S.E.2d 262, 263 (2000)).

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."  *Seels v. Smalls*, 437 S.C. 167, 176, 877 S.E.2d 351, 356 (2022) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)).  "The plain language of a statute is the best evidence of the legislature's intent."  *Id.*  "If a statute's language is plain, unambiguous, and conveys a clear and definite meaning, rules of statutory interpretation are not necessary, and the court has no right to look for or impose another meaning."  *S.C. Dep't of Soc. Servs. v. Lisa C.*, 380 S.C. 406, 414, 669 S.E.2d 647, 651 (Ct. App. 2008).

"If a statute is susceptible to two reasonable interpretations, it is ambiguous."  *Id.* at 416, 669 S.E.2d at 652.  "When 'a statute is ambiguous, the [c]ourt must construe the terms of the statute.'"  *Id.* (quoting *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002)).  "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute."  *Id.* (quoting *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000)).  "This [c]ourt, in construing a statute, must effectuate the intent of the legislature.  We are not, however, 'always confined to the literal meaning of a statute; the real purpose and intent of the lawmakers will prevail over the literal import of the words.'"  *Harris v. Harris*, 307 S.C. 351, 353, 415 S.E.2d 391, 393 (1992) (quoting *Gunnels v. Am. Liberty Ins. Co.*, 251 S.C. 242, 247, 161 S.E.2d 822, 824 (1968)).

Statutes that deprive a court of jurisdiction must be strictly construed.  *Smalls v. Weed*, 293 S.C. 364, 368, 360 S.E.2d 531, 533 (Ct. App. 1987) (per curiam) (citing *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 84 F.2d 641 (4th Cir. 1936) (providing that statutes in derogation of a court's equity powers are to be strictly construed), *aff'd*, 300 U.S. 515 (1937)).  "Moreover, any legislation [that] is in derogation of common law must be strictly construed and not extended in application beyond the clear legislative intent."  *Id.*  "Under the common law, a parent is responsible for the support of his or her minor child."  *Trident Reg'l Med. Ctr. v. Evans*, 317 S.C. 346, 352, 454 S.E.2d 343, 346 (Ct. App. 1995); *see also Hughey v. Ausborn*, 249 S.C. 470, 476, 154 S.E.2d 839, 841 (1967) ("A father . . . is bound to furnish the necessities of life to his minor child . . . .").

The statute upon which Mother relies to argue the family court does not have jurisdiction here states:

> The family court has exclusive jurisdiction:
> . . .
> (17) To make all orders for support run until further order of the court, *except that orders for child support run until the child turns eighteen years of age* or until the child is married or becomes self-supporting, as determined by the court, whichever occurs first . . . .

§ 63-3-530(A)(17) (emphasis added).

That statute provides the family court has also exclusive jurisdiction:

> (14) to order support of a . . . child . . . ;
> (15) to include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, both before and after the birth, the expense of educating his or her child and other proper and reasonable expenses;
> (16) to require of persons legally chargeable with the support of a . . . child, who are possessed of sufficient means or who are able to earn such means, the payment . . . of a fair and reasonable sum for such support, or as a contribution toward such support, according to the means of the persons so chargeable . . . .

S.C. Code Ann. § 63-3-530(A) (2010).

"The family court has the authority to enforce the provisions of any decree, judgment, or order regarding child support of a court of this [s]tate, including cases with jurisdiction based on the revised Uniform Reciprocal Enforcement of Support Act[ (URESA)[12]], provided that personal jurisdiction has been properly established." § 63-17-310. "This authority *includes the right to modify any such*

---

[12] The Editor's Note to this section states, "The [URESA], referenced in this section, is now the [UIFSA]." S.C. Code Ann. § 63-17-310 editor's note (Supp. 2025). Thus, we read this statute as applying to cases with jurisdiction under the UIFSA.

*decree, judgment, or order for child support* as the court considers necessary upon a showing of changed circumstances." *Id.* (emphasis added). "No such modification is effective as to any installment accruing prior to filing and service of the action for modification. Additionally, the family court has the right to hold any arrearage in child support in abeyance." *Id.*

Section 63-3-530(17) "provides the family court with jurisdiction to continue orders for support until the eighteenth birthday of the supported child. At which point, under South Carolina law, a parent's obligation to pay child support generally ends by operation of law." *Blackwell v. Fulgum*, 375 S.C. 337, 343, 652 S.E.2d 427, 430 (Ct. App. 2007). "Under South Carolina law, a parent's obligation to pay child support generally extends until the child reaches majority then ends by operation of law." *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 281, 705 S.E.2d 78, 81 (Ct. App. 2011). However, when "one of multiple children reaches majority, a parent's child support obligation will not be affected absent a family court order modifying the amount of support owed." *Id.* at 281-82, 705 S.E.2d at 81-82 (quoting *Blackwell*, 375 S.C. at 343-44, 652 S.E.2d at 430). In *Blackwell*, "the family court held the mother was not entitled to unilaterally reduce her child support payments and was responsible for the full amount of support *until the date she filed her motion for temporary relief*, approximately twenty-two months after the eldest child turned eighteen." *Polite*, 391 S.C. at 283, 705 S.E.2d at 82 (emphasis added).

In *Bauckman*, this court recognized our state has a "statutory bar against retroactive child support reductions and [a] strong precedent concerning the rights of a minor child to support." 429 S.C. at 242, 838 S.E.2d at 214. This court stated, "[O]ur jurisprudence concretely supports the courts' jurisdiction to preclude any reduction in child support that would be inimical or prejudicial to the rights of children." *Id.* at 243, 838 S.E.2d at 214-15.

"[C]hild support payments vest as they accrue and the natural parent is liable for arrearages . . . . However, . . . even though accrued payments are vested, they are subject to divestiture." *Alley v. Bennett*, 298 S.C. 218, 220, 379 S.E.2d 294, 295 (Ct. App. 1989) (per curiam).

South Carolina statutory law "imposes equal support duties on both parents absent pleading and proof that circumstances otherwise warrant." *McElrath v. Walker*, 285 S.C. 439, 442, 330 S.E.2d 313, 314 (Ct. App. 1985); *see also* S.C. Code Ann. § 63-5-10 (2010). "[B]oth the father and mother are primarily liable for their child's support." *Jones v. Jones*, 290 S.C. 49, 52, 348 S.E.2d 178, 180 (Ct. App.

1986).  "[T]he amount of support required of each parent must be fair."  *Id.*  "An equal support duty is not synonymous with an identical support payment, however. . . .  [T]he determination of the amount of support to be ordered must be made in such a way that reflects fairness for all the parties involved."  *McElrath*, 285 S.C. at 442, 330 S.E.2d at 314.  "Fairness requires that the court consider both the needs of the child and the abilities of the parents to provide support."  *Sauls v. Sauls*, 287 S.C. 297, 301, 337 S.E.2d 893, 895-96 (Ct. App. 1985).

"Each parent has an obligation to contribute toward the support of a minor child."  *Corley v. Rowe*, 280 S.C. 338, 342, 312 S.E.2d 720, 723 (Ct. App. 1984).  In *Corley*, this court found the record contained no evidence "to show why the burden of supporting th[e] child should not be shared equally, given the financial status of the parties."  *Id.*  "[T]he form and amount of a parent's support obligation is based upon the needs of the child and the ability of the parent to pay."  *Thompson v. Brunson*, 283 S.C. 221, 226, 321 S.E.2d 622, 625 (Ct. App. 1984).  "Support . . . encompasses more than financial aid."  *Smith v. Smith*, 294 S.C. 194, 198, 363 S.E.2d 404, 406 (Ct. App. 1987).  "[F]inancial assistance is just one aspect of a support obligation.  Another aspect of support includes the services parents provide for a child."  *Cross v. Cross*, 296 S.C. 474, 476, 374 S.E.2d 178, 179 (1988) (per curiam).  In *Cross*, our supreme court recognized that in that case, the custodial parent "ha[d] the responsibility of performing the daily services the child requires, i.e., preparing meals, helping with homework[,] and washing clothes."  *Id.*  In *Smith*, this court observed a custodial parent could "contribute substantially to [his or her] mutual obligation to support [the] children" by "performing for [the] children all the day-to-day services demanded."  294 S.C. at 198, 363 S.E.2d at 406.

"[C]ourts have the inherent power to do all things reasonably necessary to [e]nsure that just results are reached to the fullest extent possible."  *Burch v. Burch*, 395 S.C. 318, 331, 717 S.E.2d 757, 764 (2011) (quoting *Buckley v. Shealy*, 370 S.C. 317, 323-24, 635 S.E.2d 76, 79 (2006)).  Further, "[one] who seeks equity must do equity."  *Id.* (alteration in original) (quoting *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 479, 451 S.E.2d 924, 929 (1994)).

"A family court has authority to modify the amount of a child support award upon a showing of a substantial or material change of circumstances."  *Scott v. Scott*, 422 S.C. 154, 159, 810 S.E.2d 439, 441 (Ct. App. 2018) (quoting *Miller v. Miller*, 299 S.C. 307, 310, 384 S.E.2d 715, 716 (1989)).  "The burden is upon the party seeking the change to prove the changes in circumstances warranting a modification."  *Miller*, 299 S.C. at 310, 384 S.E.2d at 716.

"The South Carolina Child Support Guidelines (Guidelines) . . . govern all actions involving questions of child support." *Woodall v. Woodall*, 322 S.C. 7, 13, 471 S.E.2d 154, 158 (1996).  "In determining whether or not to award child support, courts should consider both parents': (1) incomes; (2) ability to pay; (3) education; (4) expenses; (5) assets; and (6) the facts and circumstances surrounding each case." *Burch*, 395 S.C. at 331, 717 S.E.2d at 764.  "Family court judges are generally required to follow the . . . Guidelines . . . when awarding child support." *Id.*  "Generally, the amount of child support which would result from the application of the child support guidelines is the amount of child support to be awarded." *Smith v. Smith*, 386 S.C. 251, 262, 687 S.E.2d 720, 726 (Ct. App. 2009).  The Guidelines contain a worksheet for calculating the child support obligation, which uses the phrase "Net Child Support To Be Paid to Custodian" to indicate the final calculated amount.  South Carolina CHILD SUPPORT GUIDELINES, South Carolina Department of Social Services CHILD SUPPORT OBLIGATION: WORKSHEET A, at 32 (2024 ed.), https://dss.sc.gov/media/tarlq4ar/2024-child-support-guidelines-booklet-final.pdf; *see also* S.C. Code Ann. Regs. 114-4750 (Supp. 2025) ("South Carolina Child Support Guidelines Schedule and worksheets are specifically incorporated into these regulations by reference.  Copies of the Schedule and worksheets . . . may . . . be obtained from the State Department of Social Services . . . ."); *Rogers v. Rogers*, 343 S.C. 329, 333 n.8, 540 S.E.2d 840, 842 n.8 (2001) (using the Child Support Obligation Calculator on the Department of Social Services website to determine the correct amount of a child support obligation); South Carolina Department of Social Services Child Support Calculator, https://dss.sc.gov/child-support/calculator (last visited June 1, 2026).

"Although a monetary obligation is computed for each parent, the guidelines presume that the parent to whom support is owed will spend that parent's share directly on the child in that parent's custody."  S.C. Code Ann. Regs. 114-4720(A)(15)(B) (Supp. 2025).  "[Child] support money belongs to the child, not to the custodial parent and the custodial parent has no right to the support money independent of the child." *Alexander v. Alexander*, 494 So. 2d 365, 367 (Miss. 1986).

In *Broome v. Larkin*, this court affirmed the family court's decision that a substantial change of circumstances had occurred when a child who had been living with the mother began living with the father and thus, the father was entitled to a downward modification of child support.  295 S.C. 498, 499-500, 369 S.E.2d 153, 154 (Ct. App. 1988).

"An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."  Rule 26(a), SCRFC.  If a family court issues an order without those findings, this court can "remand the matter to the trial court or, whe[n] the record is sufficient, make [our] own findings of fact in accordance with the preponderance of the evidence."  *Badeaux*, 337 S.C. at 203, 522 S.E.2d at 839 (quoting *Griffith v. Griffith*, 332 S.C. 630, 647, 506 S.E.2d 526, 535 (Ct. App. 1998)); *see also Bull v. Smith*, 299 S.C. 123, 126, 382 S.E.2d 905, 906-07 (1989) (noting an appellate court may review the record to make findings of fact if the family court's order failed to make such findings).  In *Badeaux*, this court determined the record was sufficient for this court to make the necessary findings of fact.  337 S.C. at 203, 522 S.E.2d at 839.  This court noted, "While the order of the [f]amily [c]ourt does not articulate specific calculations or references to where the amounts listed were derived, the record contains the . . . official pay history for Father's support."  *Id.*

"[A] change in custody analysis . . . asks whether the transfer in custody is in the child's best interests.  In order for a court to grant a change in custody, there must be a showing of changed circumstances occurring subsequent to the entry of the divorce decree."  *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004).  "A change in circumstances justifying a change in the custody of a child simply means that sufficient facts have been shown to warrant the conclusion that the best interests of the children would be served by the change."  *Sellers v. Nicholls*, 432 S.C. 101, 117, 851 S.E.2d 54, 62 (Ct. App. 2020) (quoting *Latimer*, 360 S.C. at 381, 602 S.E.2d at 35).  "The change of circumstances relied on for a change of custody must be such as would substantially affect the interest and welfare of the child."  *Latimer*, 360 S.C. at 381, 602 S.E.2d at 35.  "[W]hen a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child."  *Id.*

"Our appellate courts have assigned varying degrees of weight to the custodial preferences of minors depending on their age."  *Fossett v. Fossett*, 440 S.C. 576, 584, 891 S.E.2d 515, 519 (Ct. App. 2023).  Our supreme court has previously "accorded great weight to the preferences of a sixteen-year-old child."  *Id.* (citing *Guinan v. Guinan*, 254 S.C. 554, 557, 176 S.E.2d 173, 174 (1970)).  This court has also observed "'great weight' . . . should be given [to] the desires of a sixteen-year-

old.'" *Brown v. Brown*, 362 S.C. 85, 95, 606 S.E.2d 785, 790 (Ct. App. 2004).

In *Holcombe v. Hardee*, our supreme court found the issue of child support was "not moot because a question still remain[ed] as to whether the father should have received child support before [the child] attained age eighteen." 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991). In that case, "our supreme court held the father's argument that the family court erred by refusing to require the mother to pay child support was not moot even though the child had reached the age of eighteen." *Bristol v. Lipnevicius*, 444 S.C. 373, 384, 906 S.E.2d 618, 624 (Ct. App. 2024) (citing *Holcombe*, 304 S.C. at 524, 405 S.E.2d at 822).

We recognize the family court did not change primary placement from Mother to Father; by the time the matter was tried, V.G. had already turned eighteen. However, we cannot ignore the fact that V.G. lived with Father the entire time for which Mother argues she was entitled to continue receiving support. Mother also received child support from Father for the five months after visitation was scheduled to end and prior to the time Father stopped paying the child support and the family court terminated obligation, during which V.G. lived with Father the entire time. Mother never made any attempt, other than asking Father to return V.G. at the end of summer visitation,[13] to have V.G. return to the home, such as filing a rule to show cause.

It would be inequitable for Father to be required to continue paying Mother child support when V.G. no longer lived in her home, Mother was not providing her with any support, and V.G. would not be returning to Mother's home. While Father did not pay child support to Mother during the period in question, he was still supporting V.G. V.G. lived in his home and drove a vehicle he provided without her paying rent or making any other payments to him. Father's health insurance covered V.G. as a minor dependent. He testified she began paying for half of her car insurance once she had completed driver's education and had received her driver's license, which was close when she turned eighteen. Father testified he and his current wife provided V.G. with necessities from the time she began living with them until she turned eighteen. He testified Mother did not provide any support.

---

[13] The California custody order provided as to Father's custodial time, he "shall have the first part of summer each year from the Sunday after school lets out until three weeks before school resumes." It appears the day after V.G.'s graduation, when she began living with Father, was a Wednesday.

Mother seems to argue that based on the statute establishing the family court's jurisdiction, a family court can never end a child support obligation before the child turns eighteen or is emancipated. In support of this argument, Mother has provided only the jurisdictional statute and a case from our supreme court stating that the family court has only the jurisdiction the statute gives it. She has not provided any case in which such a statement has been made. We do not read that statute as mandating that child support continue in every circumstance until one of those guideposts is met. Additionally, Mother's assertion is incorrect; in several situations, a child support obligation could end prior to this time, including adoption or death of child or parent. Mother asserts termination is distinct from modification. The only legal support Mother provides for this argument is a statute that states the family court has jurisdiction and authority to modify any other court's order concerning support of children. However, she provides no authority that termination of child support does not include the same factors as modification. We see no reason why it would not involve the same factors. Section 63-3-530(17) of the South Carolina Code does not mean a family court loses jurisdiction when a child turns eighteen. Further, it does not mandate child support continue until the child turns eighteen in every situation. A family court continues to have jurisdiction over child support matters in cases in which the child is still attending high school, in some situations when the child will attend college, and when a child will still need support due to a disability.

At the temporary hearing on October 16, 2019, two months before Father stopped paying child support, the family court stated the court would not return to Mother's home a seventeen-year-old who has a job. Additionally, the court stated it "would be totally surprised if this matter was heard before [V.G.'s eighteenth] birthday." The court further stated that "because of the nature of the case and the nature of our docket, there is not going to be any relief other than monetary relief at the end." Accordingly, the parties knew the family court would not reach a decision as to whether V.G. would have had to return to Mother's home before she turned eighteen.

Mother next argues the family court made no findings of fact in support of its ruling to terminate child support before any of the events provided by statute occurred. We disagree. The family court's order stated that V.G. came to visit Father the day following her high school graduation, she decided she wanted to remain in North Carolina with Father and not return to Mother's home, V.G. did not return to Mother's physical custody, and V.G. was financially supported by Father with no assistance from Mother. Further, the family court found Mother did not attempt to retrieve V.G. from Father's home or visit with V.G. and Mother

testified that forcing V.G. to return to Mother's home would have "made our life a living hell." All of these are findings that support the family court's decision to terminate Father's child support obligation to Mother and the record fully supports those findings. We review the family court's decision here de novo and make our own findings of fact. Father's obligation is to provide support for his child. He met that obligation when V.G. lived in his home full-time and he provided for her care while there. Mother received child support during the time when V.G. lived with her. She continued to receive child support for about five months after V.G.'s visitation time was scheduled to end.[14] Father continued paying child support for about five months after he filed the original complaint requesting his child support obligation be terminated prospectively.[15] Following our review of the record, we have arrived at the same decision and fully agree with the family court's findings.[16] The family court did not err in terminating Father's child support obligation to Mother as of December 2019.[17]

---

[14] V.G. had been living with father for about two months when visitation was scheduled to end.

[15] Father testified California stopped withdrawing his child support from his paycheck because he provided proof V.G. lived with him permanently. He testified Mother did not object to that.

[16] Father did not request child support from Mother in his original or amended complaint but eventually, in January 2020, in his second amended complaint he requested child support retroactive to the date of filing and an order that Mother repay child support received from August 2019 to the date of termination of Father's child support obligation. We note that under the Guidelines, using the financial declarations in the record, if Father were designated the custodial parent, Mother would owe Father child support.

[17] As noted above, to be in keeping with the UIFSA, the modification to the California child support order must also comply with California law. As in South Carolina, in California, "A child support order may be modified when there has been a material change of circumstances." *In re Marriage of Cryer*, 131 Cal. Rptr. 3d 424, 436 (Ct. App. 2011); *see also In re the Marriage of Lehrer*, 133 Cal. Rptr. 709, 711 (Ct. App. 1976) (recognizing a party has the option to seek a modification of a child support obligation based upon changed circumstances if the party felt termination of child support was justified). Except in certain situations not applicable here, "a support order may be modified or terminated at any time as the court determines to be necessary." Cal. Fam. Code § 3651(a) (West). "An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date . . . ." Cal. Fam. Code § 3653(a) (West).

2. Mother also contends the trial court abused its discretion by denying her motion to dismiss pursuant to Rule 12(b)(1) and (6), SCRCP, for Father's and V.G.'s causes of action relating to emancipation. She asserts those causes of action lack statutory support for the relief sought and the family court did not have the jurisdiction to grant such relief. In making this argument, Mother provides as supporting authority case law providing the general standard of review in family court cases, the definition of emancipation from *Black's Law Dictionary*, and a quotation about emancipation from a case.[18] This quotation from *Parker* and definition from *Black's* does not convince us that the family court erred in denying the motion to dismiss. We note that Mother has provided no case law or other authority as to this court or the family court's standard of review in a motion to dismiss under 12(b).

"An issue is deemed abandoned if the argument in the brief is only conclusory." *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct. App. 2000); *see also Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 327 n.1, 730 S.E.2d 282, 284 n.1 (2012) (providing that when an appellant's "argument in [his or] her brief is purely a recitation of facts, devoid of any citation to legal authority, with [only a] summary conclusion," the argument has been abandoned); *Palmer v. State*, 427 S.C. 36, 47, 829 S.E.2d 255, 261 (Ct. App. 2019) ("When a party provides no legal authority regarding a particular argument, the argument is abandoned and the court will not address the merits of the issue."); *State v. Colf*, 332 S.C. 313, 322, 504 S.E.2d 360, 364 (Ct.

A child support "obligation is to the child and not to the [parent]." *Jackson v. Jackson*, 124 Cal. Rptr. 101, 103 (Ct. App. 1975). "[A] parent can discharge the child support obligation by caring for the child at the parent's own expense." *In re Marriage of Wilson*, 208 Cal. Rptr. 3d 779, 783 (2016). In *Jackson*, the court of appeals determined the trial court had the discretion to decide the father had directly discharged his child support obligation when the child lived in the father's home—due to the child's strong desires and with the mother's consent—and the father provided support in an amount exceeding the court-ordered amount to be paid to the mother. 124 Cal. Rptr. at 104; *see also In re Marriage of Trainotti*, 261 Cal. Rptr. 36, 38 (Ct. App. 1989) (providing the "trial court erred by refusing to consider whether [the father] had satisfied his obligation by furnishing [the child], with the approval of [the mother], a home and support that was equal to or in excess of the court-ordered amount"). Under California law, Father's child support obligation could be terminated.

[18] *Parker v. Parker*, 230 S.C. 28, 94 S.E.2d 12 (1956).

App. 1998) (noting a conclusory, two-paragraph argument that cited no authority other than an evidentiary rule was abandoned), *aff'd as modified on other grounds*, 337 S.C. 622, 525 S.E.2d 246 (2000); *Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691-92 (Ct. App. 2001) (determining an appellant abandoned an issue when it raised the issue in its appellant's brief in a conclusory manner and "even though [it] more fully addressed the issue in its reply brief, an argument made in a reply brief cannot present an issue to the appellate court if it was not raised in the initial brief").

A motion to dismiss under 12(b) is not final and the issue can be raised again later in the proceedings. Here, the issue sought to be resolved by Mother in the motion—that emancipation cannot be sought in this manner—never needed to be decided because by the time this case was called to trial, V.G. had turned nineteen and all involved agreed the issue of emancipation was moot. Accordingly, the matter to be decided by the 12(b) is also moot. The only reason that would remain for us to determine whether the family court erred in denying the motion would be because Mother's request for sanctions in large part relied on her argument that the attorneys should have never brought such an action. However, as provided in the next section, any issue Mother attempted to raise on appeal regarding sanctions was abandoned by failing to cite any authority. Accordingly, we affirm this issue.

"[T]he denial of a motion to dismiss does not establish the law of the case and the issue raised by the motion can be raised again at a later stage of the proceedings." *McLendon v. S.C. Dep't of Highways & Pub. Transp.*, 313 S.C. 525, 526 n.2, 443 S.E.2d 539, 540 n.2 (1994). "An order *denying* a motion to dismiss for lack of subject matter jurisdiction does not *finally* determine anything." *Woodard v. Westvaco Corp.*, 319 S.C. 240, 243 n.2, 460 S.E.2d 392, 394 n.2 (1995), *overruled on other grounds by Sabb v. S.C. State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002). "[W]hatever doesn't make any difference, doesn't matter." *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987).

This issue is also moot. "Before any action can be maintained, there must exist a justiciable controversy." *Bristol*, 444 S.C. at 384, 906 S.E.2d at 624 (quoting *Byrd v. Irmo High Sch.*, 321 S.C. 426, 430, 468 S.E.2d 861, 864 (1996)). "A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute or difference of a contingent, hypothetical[,] or abstract character." *Id.* (alteration in original) (quoting *Byrd*, 321 S.C. at 430-31, 468 S.E.2d at 864). "A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief

impossible for the reviewing court." *Id.* (quoting *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006)).

3. In her third issue, Mother argues the family court erred in denying her motion for sanctions and asserts she satisfied the threshold of *E.D.M. v. T.A.M.* for an award of attorney's fees. We disagree.

At trial, Mother sought sanctions pursuant to Rule 11, SCRCP, and the South Carolina Frivolous Civil Proceedings Sanctions Act[19] (Sanctions Act). On appeal, the only authority Mother provides in her brief for this argument are cases providing this court's standard of review for appeals from the family court. Mother does not provide any supporting authority relevant to this argument; specifically, she has cited no statute, rule, or case regarding sanctions or attorney's fees, including Rule 11 or the Sanctions Act. Accordingly, Mother's argument regarding sanctions is abandoned. "An issue is deemed abandoned if the argument in the brief is only conclusory." *R & G Constr., Inc.*, 343 S.C. at 437, 540 S.E.2d at 120; *see also Atl. Coast Builders & Contractors, LLC*, 398 S.C. at 327 n.1, 730 S.E.2d at 284 n.1 (providing that when an appellant's "argument in [his or] her brief is purely a recitation of facts, devoid of any citation to legal authority, with [only a] summary conclusion," the argument has been abandoned); *Palmer*, 427 S.C. at 47, 829 S.E.2d at 261 ("When a party provides no legal authority regarding a particular argument, the argument is abandoned and the court will not address the merits of the issue."); *Colf*, 332 S.C. at 322, 504 S.E.2d at 364 (noting a conclusory, two-paragraph argument that cited no authority other than an evidentiary rule was abandoned); *Glasscock, Inc.*, 348 S.C. at 81, 557 S.E.2d at 691-92 (determining an appellant abandoned an issue when it raised the issue in its appellant's brief in a conclusory manner and "even though [it] more fully addressed the issue in its reply brief, an argument made in a reply brief cannot present an issue to the appellate court if it was not raised in the initial brief").

Additionally, although Mother's attorney's fees argument is likely abandoned as well,[20] we disagree with any argument she should have been awarded attorney's fees pursuant to *E.D.M. v. T.A.M.* An appellate "[c]ourt reviews a family court's award of attorney's fees de novo." *Stone v. Thompson*, 428 S.C. 79, 92, 833 S.E.2d 266, 272 (2019).

---

[19] S.C. Code Ann. §§ 15-36-10 to -100 (Supp. 2025).

[20] As described above, Mother abandoned her argument that ordering Father, Father's counsel, and V.G.'s counsel to pay her attorney's fees would be an appropriate sanction.

Mother does not provide a citation for *E.D.M. v. T.A.M.*, nor does she state what threshold it sets. We recognize that *E.D.M. v. T.A.M.* provides that a court should consider "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living" when deciding whether to award an attorney's fee. 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). Mother asserts the evidence reflects Father has a greater ability to pay than her, Father enjoys better financial conditions than her, and she obtained greater beneficial results, but she provides no indication these factors are from *E.D.M.* In relation to these factors, Mother argues Father's income was $1,700 more than hers per month; her attorney's fees were three times Father's and the family court found her attorney's fees reasonable; and Father sought relief on three issues, plus attorney's fees, and she prevented him from prevailing on custody and emancipation. Mother further asserts that based on her argument on child support, she should obtain even greater results on appeal.

Under our de novo standard of review, this "court has the authority to find the facts in accordance with its own view of the preponderance of the evidence." *Tomlinson*, 428 S.C. at 611, 837 S.E.2d at 232. "[T]his broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony." *Id.* "[T]he appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the court's findings." *Id.* at 611-12, 837 S.E.2d at 232.

"Beneficial result[s] alone [are] not dispositive of whether a party is entitled to attorney's fees." *Chisholm v. Chisholm*, 396 S.C. 507, 510, 722 S.E.2d 222, 224 (2012) (quoting *Upchurch v. Upchurch*, 367 S.C. 16, 28, 624 S.E.2d 643, 649 (2006), *disapproved of on other grounds by Miles v. Miles*, 393 S.C. 111, 711 S.E.2d 880 (2011)). "[F]or a spouse to be entitled to suit money, the claim must be 'well founded.' The burden of proving that a claim is well founded is on the party seeking suit money." *Anderson v. Tolbert*, 322 S.C. 543, 547, 473 S.E.2d 456, 458 (Ct. App. 1996) (per curiam).

Based on our own review of the record, the family court did not err in denying Mother's request for Father to pay her attorney's fees. Both parties received some beneficial results: Father's child support obligation ended but he was not awarded child support and Mother did not have to repay child support Father already paid to

her.  A change in custody was not awarded because V.G. turned eighteen prior to the time the case was called to trial; however, V.G. lived with Father this entire time.  Mother testified she had already paid most of her attorney's fees, which demonstrates she had the ability to pay.  Further, to some extent, Mother prolonged the action with her conduct and opposed the change in custody despite V.G.'s preference to live with Father.  *See Thornton v. Thornton*, 428 S.C. 460, 477-78, 836 S.E.2d 351, 360-61 (Ct. App. 2019) (affirming the family court's decision to make each party pay his or her own attorney's fees when both parties were employed, although the father had a higher monthly income than the mother, the mother's filing of additional discovery motions and insisting on pursuing custody despite the children's "unwavering desire" to live with their father led to additional costs in the action, and the father obtained more beneficial results and paying the fees would have hurt his and children's standard of living).  Based on all of this, we affirm the family court's decision to not award Mother attorney's fees.

**AFFIRMED.**

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**